KAUFMAN, SEMERARO, & LEIBMAN, LLP
2 Executive Drive, Suite 530
Fort Lee, New Jersey 07024
T: 201-947-8855
F: 201-947-2402
E: jsantagata@northjerseyattorneys.com
Attorneys for Plaintiff

| | |
|---|---|
| SHANDEL DOUGLAS,<br><br>Plaintiff,<br><br>v.<br><br>CENTER FOR COMPREHENSIVE CARE/JERSEY CITY MEDICAL CENTER, RWJ BARNABAS HEALTH, INC., DR. ADRIANA GRIGORIU, JOHN DOES 1-10<br><br>Defendants. | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY NEWARK VICINAGE<br><br>DOCKET:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Pursuant to Fed.R.Civ.P. 8, Plaintiff Shandel Douglas alleges as follows.

## PARTIES

1.  Ms. Douglas is a former employee at Center for Comprehensive Care/Jersey City Medical Center ("**Medical Center**") in Jersey City, New Jersey. Ms. Douglas was a registered nurse at the Medical Center until November 24, 2015, when she was terminated. Her rate of pay was $38.11 per hour at the time of her termination.

2.  The Medical Center is a hospital with a service address of 55 Meadowlands Parkway in Secaucus, New Jersey; its registered agent is Donald Parseghian. The Medical Center is a non-profit organization; its employees are paid

and overseen by RWJ Barnabas Health, Inc. ("**Barnabas**"), which has a service address of 95 Old Short Hills Road in West Orange, New Jersey and whose registered agent is David Mebane. Ms. Douglas' employers were the Medical Center and Barnabas collectively ("**Employer**") Barnabas. Her supervisor was Dr. Adriana Grigoriu, whose address is 206 Shearwater Court West, Jersey City, New Jersey 07305.

3. Dr. Grigoriu is an employee of Employer.

## JURISDICTION AND VENUE

4. The Court has federal subject matter jurisdiction because this Complaint alleges violation of Title VII of the Federal Civil Rights Act ("**Title VII**"), 42 U.S.C. §§ 2000e, et seq.

5. The Court has supplemental jurisdiction over Ms. Douglas' state law claims because they arise from the same set of operative facts as her federal claim—her employment with Barnabas.

6. Venue is proper in the Court because a substantial part of the events or omissions giving rise to Ms. Douglas' claims occurred in Hudson, which is located within the Newark Vicinage of the United States District Court for the District of New Jersey.

## FACTUAL BACKGROUND

7. On July 22, 2015, Ms. Douglas, a black registered nurse, emailed the vice president of human resources, Mary Cataudella, to complain about the

"condescending and belittling" behavior of Eileen Scarinci, a white nurse practitioner.

8. Following Ms. Douglas' complaint, Eileen Scarinci was issued a written warning and advised to address Ms. Douglas in a respectful manner.

9. Following Ms. Douglas' complaint, Eileen Scarinci, Dr. Grigoriu and other employees of Employer engaged in a continued course of harassment and retaliation against Ms. Douglas.

10. The acts of harassment and retaliation included, but were not limited to, declining to grant Ms. Douglas schedule changes but rather granting her a "provisional approval" while other employees were granted approvals, unjust criticism and inspection of Ms. Douglas' work while criticism and reprimand of other white employees who made far greater mistakes were overlooked, and a targeted campaign to sabotage Ms. Douglas' continued employment with Employer.

11. Ms. Douglas complained that she believed Eileen Scarinci and management were retaliating against her for complaining about harassment in the workplace but management did nothing to stop the harassment or retaliation.

12. On August 10, 2015, after Eileen Scarinci's behavior did not improve, Ms. Douglas filed a grievance with human resources alleging Ms. Scarinci had continued to subject Ms. Douglas to harassment and retaliation.

13. On October 1, 2015, Ms. Douglas filed another grievance against management for harassment and retaliation.

14. Human resources received both complaints but delayed the investigation of both.

15. These complaints centered on retaliation, harassment and bullying directed at minority employees such as Ms. Douglas. White employees were not subject to the same harassment and bullying.

16. In addition, Ms. Douglas complained to Ms. Cataudella and her union representative, Doreen Jones, that Dr. Grigoriu consistently treated black nurses differently than white nurses.

17. Human resources received complaints about the behavior of and disparate treatment by Dr. Grigoriu.

18. On October 29, 2015 at around noon, Ms. Douglas provided a vaccination for a patient, who often came to the Medical Center under the influence of alcohol.

19. At 2:00pm, Ms. Douglas had a meeting with Ms. Cataudella, among others, to discuss the continuing investigation into Ms. Douglas' complaints.

20. At 3:30pm, Ms. Douglas was suspended for allegedly failing to give the vaccination to the patient and falsely documenting that she had given it.

21. After Ms. Douglas denied the allegations, Dr. Grigoriu had the patient's blood tested for the vaccine. It did not show up because the vaccine's antibodies do not show up in a patient's bloodstream for weeks or even months after the vaccination is given. Dr. Grigoriu knew this when she had the test performed just days after the vaccination was administered.

22. Dr. Grigoriu is close friends with Eileen Scarinci. Eileen Scarinci's daughter, Regina, also worked at Employer and had previously given the wrong vaccination to a patient. Dr. Grigoriu was aware of this but did not report it. Regina Scarinci was never disciplined for this mistake.

23. On October 30, 2015, Regina Scarinci was accused of falsely documenting that a mammogram had been received and failing to place the mammogram into the patient's chart. Regina Scarinci was not disciplined for this mistake.

24. On November 24, 2015, the Employer terminated Ms. Douglas.

25. On October 20, 2016, the Federal Equal Employment Opportunity Commission issued Ms. Douglas a "right to sue" letter.

## COUNT ONE: RACIAL DISCRIMINATION
### (Title VII to the Federal Civil Rights Act, New Jersey Law Against Discrimination)

26. Ms. Douglas repeats and re-alleges paragraphs of 1-25 of this complaint as if fully set forth in this count.

27. Title VII to the Federal Civil Rights Act ("**Title VII**"), 42 U.S.C. § 2000e, et seq., and the New Jersey Law Against Discrimination ("**LAD**"), N.J.S.A. 10:5-1, et seq., prohibited the Employer from taking adverse action against Ms. Douglas based on her race or from treating employees differently based on predominantly on their race.

28. In terminating Ms. Douglas, the Employer violated Title VII and LAD because, among other reasons, the termination was based on Ms. Douglas' race and

because white employees were not terminated for the same or similar supposed infraction.

## COUNT TWO: UNLAWFUL RETALIATION
## (Title VII, LAD)

29. Ms. Douglas repeats and re-alleges paragraphs of 1-28 of this complaint as if fully set forth in this count.

30. Title VII and LAD precluded the Employer from taking adverse action against Ms. Douglas because she complained about race-based, unlawful unemployment practices at the Medical Center.

31. The Employer terminated Ms. Douglas because, among other reasons, she complained about disparate treatment of black employees and about the hostile work environment created by Eileen and Regina Scarinci and Dr. Grigoriu.

## COUNT THREE: HOSTILE WORK ENVIRONMENT
## (Title VII, LAD)

32. Ms. Douglas repeats and re-alleges paragraphs of 1-31 of this complaint as if fully set forth in this count.

33. Title VII and LAD prohibited the Employer from permitting or failing to stop Eileen Scarinci, Dr. Grigoriu and John Does from intentionally, pervasively, and regularly harassing Ms. Douglas because of her race, otherwise known as creation of a hostile work environment.

34. The Employer is liable for the hostile work environment created by Eileen Scarinci and Dr. Grigoriu because it negligently failed to take remedial action once it became aware of the environment.

35. The Employer is strictly liable for the hostile work environment created by Dr. Grigoriu and John Does because they are supervisors and their conduct is imputed to the Employer.

## COUNT FOUR: AIDING AND ABETTING A VIOLATION OF LAD
## (LAD)

36. Ms. Douglas repeats and re-alleges paragraphs 1 through 35 as if fully set forth in this count.

37. A supervisor is personally liable under LAD for knowingly participating in a violation of LAD and providing substantial assistance to the violation.

38. Dr. Grigoriu knowingly participated in the violation of Ms. Douglas' rights under LAD and substantially assisted in the violation of those rights by, among other reasons: (a) treating minority employees differently than white employees; (b) retaliating against Ms. Douglas' for her complaints; and (c) using the vaccination test results against Ms. Douglas when Dr. Grigoriu knew that the antibodies from the vaccine would not show up in the test.

## DEMAND FOR RELIEF

Pursuant to counts one through four, Ms. Douglas demands relief as follows:

(a) Compensatory damages under Title VII and LAD;

(b) Damages for emotional distress;

(c) Punitive damages;

(d) Attorneys' fees and costs of suit;

(e) Such other relief as the court deems equitable and just.

## JURY DEMAND PURSUANT TO FED.R.CIV.P. 38(b)

Ms. Douglas demands trial by jury on all issues so triable.

Dated: December 9, 2016

_____
DEENA B. ROSENDAHL, ESQ.